# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

## INFORMAL BRIEFING

---

**No. 23-1994,**   **Dana Wilcox v. Rae Davis**
1:22-cv-01240-PTG-JFA

Plaintiff has submitted this case to the Court of Appeals regarding the MEMORANDUM ORDER issued by United States District Court for the Eastern District of Virginia, Alexandria Division, United States District Judge Patricia T. Giles on 28 August 2023.

## Jurisdiction:

1. Jurisdiction in the United States District Court is established by one or more of the following references in the United States Code:

    1-A.  28 USC 1331

    1-B.  28 USC 1332

    1-C.  28 USC 1391

## ISSUE 1: Sovereign Immunity

1-A. Judge Giles has declared that the Defendant's claim of Sovereign Immunity applies to the issuance and sale of GINNIE MAE securities as stated in the Plaintiff's filing.

1-B. GINNIE MAE is exempt per Securities Act of 1933, (Section 4) however, GINNIE MAE and BANK OF NEW YORK MELLON are not exempt from Securities Act of 1934, Section 10(b) et seq..), requiring Annual, et al., reports to the SEC and TO THE SECURITY HOLDERS for all securities including exempted Federal Institutions issuers / sellers.

1-C. Additionally, the rules and regulations for <u>secondary</u> purchase and resale of Issued Securities apply to all securities (exempted or not) for fraud, conversion, and/ or theft and specifically Securities Act Rule 10 (b) (5) --- "using any device, scheme, or other artifice to defraud purchasers" --- such as material information, Purchase and Sale of a security, Reliance on the information, and Cause Damage, i.e., the plaintiff must suffer some actual damages resulting from or caused by the omission or misrepresentation.

1-D. The Plaintiff contends that the above referenced Memorandum Order overlooked or ignored the detailed description of the recordkeeping requirements of the U.S. Regulations – that includes exempted securities, i.e. 24 CFR 350, et seq..(Dkt 16).

**ISSUE 2: Securities Transaction and Record Keeping**

2-A. Judge Giles's Memorandum Order incorrectly addresses the sale of "New U.S. bonds for an intergovernmental project".

2-B. The initial transaction (Dkt 1) was the sale of GNMA I securities **owned** by Owen C. Meddles/Diversified Industrial Trust to Thee Consultancy, Inc., a Delaware corporation/Dana V. Wilcox, co-owner and Special Vice President, via contract signed and dated 24 October 1990. These GNMA securities were book-entry held at the Federal Reserve Bank of New York, but were not "New Issue". (Dkt 16)

2-C. The completion of the sale of GNMA CUSIP 36217GF28 and GNMA CUSIP 36216GUZ9 on 18-19 December 1990 via PD 1832 Irrevocable Stock and Bond Power signed and dated by Owen C. Meddles, et al.. (Dkt 16)

2-D. The Book-Entry System is regulated by 24 CFR Part 350, et seq., and clearly states "...the Federal Reserve Banks as Depositories shall treat the Participant (owner) to whose Securities Account an interest in a Book-Entry Ginnie Mae security has been credited to receive interest and other payments with respect thereto and otherwise to exercise all the rights and powers with respect to such Security..." (Dkt 16)

2-E. Bank of New York (Mellon) is the Transfer Agent for GINNIE MAE, and Section 17A (c) of the Securities Act of 1934 requires that Transfer Agents be registered with United States Securities and Exchange Commission (SEC), or if the Transfer Agent is a bank, with a bank Regulatory agency.

2-F. Transfer Agents record changes of ownership, maintain the issuer's security holder records, cancel and issue certificates, and distribute dividends. SEC rules and regulations are intended to facilitate the prompt and accurate clearance and settlement of securities transactions and that assure the safeguarding of securities and funds.

2-G. 31 CFR 1010.410 (c) states that "A record of each advice, request, or instruction given to another financial institution or other person located within or without the United States, regarding a transaction intended to result in the transfer of funds or currency, other monetary instruments, checks, investment securities, or credit, of more than $10,000 to a person, account or place outside the United States." (Dkt 16)

2-H. The Exhibits (Dkt 1, Exhibit 1; Dkt 16, Exhibit 5) verify that Dana V. Wilcox has been the owner of the funds transferred from Mitsubishi Trust and Banking Corporation (Japan) to Citibank (N.J.) under the terms of the Contract/Agreement between Thee Consultancy, Inc. and Owen C. Meddles, Diversified Industrial Trust/Delmarva Timber Trust (R.E.I.T.), Maryland.

2-I. Within said Contract, Dana V. Wilcox was given specific authorities, as an officer and Special Representative, of Thee Consultancy, Inc., to enter said Contract regarding the use of said funds and receive all payments of the transferred funds and receive all payments (GNMA coupon payments and maturity payments)... (Dkt 1 Exhibit 2 & 3)

2-J. Bloomberg Screen 1, (Dkt 1, Exhibit 12 &13) indicate the Coupon Payments, and that it is "page 1 of 2". Based on information given by the bank that printed the Bloomberg screens for the Plaintiff, the Bloomberg computer screen indicated that **PAGE 2 of 2 --- showed Thee Consultancy, Inc. as an Owner of said GNMA Security CUSIP # 36217GF28 and GNMA Security CUSIP # 36216GUZ9.**

2-K. The Defendants claim that "Ginnie Mae securities are exempt from the laws administered by the Securities Exchange Commission [12 U.S.C. s 1723c]." However, the laws that govern the Securities Industry are, but not limited to:

Securities Act of 1933, Securities Act of 1934, The Trust Indenture Act of 1939, The Investment Company Act of 1940, The Sarbanes-Oxley Act of 2002, The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and the Racketeer Influenced and Corrupt Organizations Act (R.I.C.O., 1970, et al.).

2-L. The exemption of Ginnie Mae, per the Securities Act of 1933, only extends the INITIAL BOND PURCHASE by an investor via

the sale by the Issuer/Transfer Agent. Thereafter, all other activities addressed in the Securities Act of 1933 and 1934 apply due to the standing FIDUCIARY, RECORD-KEEPING, FAIR PRACTICE, and CUSTOMER PROTECTION requirements of the aforementioned Securities laws.

## ISSUE 3: APPLICATION OF R.I.C.O.

**3-A.** The Plaintiff has filed the complaint for the implementation of Racketeer Influenced and Corrupt Organizations Act (1970, et al.) --- specifically Sections 1961, et. seq.--- due to the money laundering schemes of several banks during the last thirty plus (30+) years, i.e., Bank of New York (Mellon), Citibank, Wells Fargo, Deutsche-Bank, and Credit Suisse.

**3-B** Money laundering is defined as the conversion or transfer of property; the concealment or disguising the nature of the proceeds; the acquisition, possession or use of property, knowing that these are derived from criminal acts; the participating in or assisting the movement of funds to make the proceeds appear legitimate.

**3-C.** Money laundering involves three steps:

    **a.** Introducing cash into the financial system by some means (placement);

    **b.** carrying out complex financial transactions to camouflage the illegal source of cash/funds (layering);

c. acquiring wealth generated from the transactions of the funds (integration).

3-D. Plaintiff presented (Dkt 22) in a letter to The Honorable John F. Anderson the following cases that clarified that Sovereign Immunity was not appropriate and named the Secretary of the U.S. Treasury and "one or more known and/or unknown "compliance officers" that act directly and/or under contract with private bank or security brokerage firms... that have restricted or denied Petitioner's lawful access to said money or securities" that included but not limited to J.P. Morgan Chase and Citibank/Citigroup.

   a. <u>Ambassador Leo Wanta v. United States of America, et al.,</u> Civil Action No. 02-1363-A, U.S. District Court for the Eastern District of Virginia, presided by The Honorable Gerald Bruce Lee;

   b. <u>Wanta v. Paulson,</u> Civil Action No. 1-07-CV609, U.S. District Court for the Eastern District of Virginia, presided by The Honorable T.S. Ellis.

3-E. Both cases involved the issuance of subpoenas for financial documents regarding the location of and control of funds belonging to the Petitioner, <u>but all parties subpoenaed refused to cooperate.</u>

3-F. The other application of R.I.C.O. relates to action(s) and non-action(s) of the Bank of New York Mellon compliance officer(s), Vice President Anthony Mancuso and the Inspection General

of GNMA/H.U.D. and Director of Operations Steward Spettel during the Plaintiff's efforts to obtain the financial documents related to the re-sale of the GNMA securities and payments of Interest Coupons and Maturity funds.

3-G. The Plaintiff alleges that the Bank of New York Chief Compliance Officer(s) did not respond to any of his inquiries consisting of letters / affidavits submitted via certified mail. (Dkt 22).

3-H. Vice President Mancuso, instead of helping the Plaintiff, Mr. Mancuso sent a letter as Vice President of Bank of New York Mellon that exclusively dealt with the <u>Wesley Sine v. The Bank of New York, et al.</u> (Dkt 1, Exhibit 10) --- stating that the Plaintiff was named in the Permanent Injunction and had no right to pursue the financial documentation regarding the GNMAs.(Dkt 1, Exhibits 7 and 8).

3-I. Plaintiff received an email from GNMA Supervisor, Senior Account Executive, Mr. Jonathan Hughes, on February 25, 2022, stating that GINNIE MAE was reviewing his inquiry regarding the CUSIP numbers provided and the Office of Security Operation would be conducting the research. (Dkt 1, Exhibit 14).

3-J. Plaintiff received an email, dated March 8, 2022,within which Ginnie Mae determined that the "Securities" were actually "Pooled Derivatives," and the presented CUSIPs could not be verified as Ginnie Mae certificates. (Dkt 1, Exhibit 15).

3-K. Plaintiff received an email from Mr. Stewart M. Spettel, Director of Operations, dated March 29, 2022, stating that the "pools/CUSIPS have been paid in full," and that "Ginnie Mae cannot be a party to any dispute that the plaintiff has/had with his investment vehicles and partners." (Dkt 1, Exhibit 16).

3-L. The Plaintiff submitted a full document, on May 12, 2022), to the Office of the Inspector General for the U.S. Department of Housing and Urban Development. (Dkt 1, Exhibit 1 et seq.).

3-M. Due to the non-response of the Bank of New York Compliance Office and Ginnie Mae Officials regarding the initial purchase and the contracted sale of said securities in October – December 1990, the Plaintiff was advised by several individuals within the banking and legal field to file a PRO SE R.I.C.O. complaint for adjudication and relief.

## ISSUE 4: Subject Matter Jurisdiction

4-A. Under Legal Standard, within the Memorandum Order issued by U.S. District Judge Giles, states "plaintiff bears the burden of establishing that subject matter jurisdiction is proper by a preponderance of the evidence when the defendant challenges subject matter jurisdiction." Memorandum Order, U.S. District Court Eastern District of Virginia, August 28, 2023, p 3-4.)

4-B. When considering a defendant's motion to dismiss a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. (True v. Robles, 571 F.3d 412, 417 [5th Cir. 2009].

9

4-C. In considering a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. (Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 [4th Cir. 1993].

4-D. The central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendants to prepare a fair response. (Conley, 355 U.S. at 47.)

## ISSUE 5: RELIEF REQUESTED

5-A. Plaintiff requests the Memorandum Order be dismissed.

5-B. This case be REMANDED back to U.S. District Court of Eastern District of Virginia for re-consideration since the occurrence of the alleged securities conversion was in October and December 1990 --- not 2004 or 2005.

5-C. Within the REMAND ORDER, the Plaintiff requests that this Court instruct the U.S. District Court to approve discovery and issue the requested subpoenas to the responsible financial institutions identified within said motion (Dkt 17) to obtain legal proof of the Plaintiff's allegations.

## PRIO R  APPEALS

Plaintiff has NOT filed any other appeal to this Court.

_____

10/16/23

Signature:       Dana  V.  Wilcox

_____

Printed Name:  Dana V. Wilcox

Dana V. Wilcox

517  Neely Store Road

Rock Hill, SC  29730

804-515-0268

I certify that on  10/12/23  I served a copy of this Informal Brief on all parties, addressed as shown below:

_____
Dana V. Wilcox

Stanley A. Roberts

Juliet B. Clark

McGuireWoods LLP

Gateway Plaza

800 East Canal Street

Richmond, VA 23219-3916

T: 1 804 775 4759

Yuri S. Fuchs

Assistant U.S. Attorney

U.S. Attorney's Office

2100 Jamieson Ave

Alexandria, VA 22314

T: 1 703 299 3872