UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| DANA WILCOX, | ) |
|     Plaintiff-Appellant, | ) |
| vs. | ) No. 23-1994 |
| RAE OLIVER DAVIS, *et al.*, | ) |
|     Defendants-Appellees. | ) |

**<u>FEDERAL DEFENDANTS-APPELLEES' INFORMAL RESPONSE BRIEF</u>**

Pursuant to Local Rule 34(b), Defendants-Appellees Rae Oliver Davis, Inspector General for the U.S. Department of Housing and Urban Development ("HUD"), Alanna McCargo, President of Ginnie Mae, and Stewart M. Spettel, Director of Operations for the Office of Securities Operations for Ginnie Mae (collectively "Federal Defendants"), by and through undersigned counsel, hereby respectfully submit their informal brief in this appeal.

**<u>STATEMENT OF JURISDICTION</u>**

The District Court had jurisdiction over Plaintiff-Appellant Dana Wilcox's ("Plaintiff") action under 28 U.S.C. § 1331. On August 28, 2023, the District Court dismissed Plaintiff's action for lack of subject matter jurisdiction. *See* (Dkt. No. 32.) Plaintiff timely appealed the District Court's order on September 21,

1

2023. *See* Notice of Appeal (Dkt. No. 33.) This Court now has jurisdiction to hear Plaintiff's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the District Court properly dismissed Plaintiff's claims for damages arising under the federal securities laws against Federal Defendants for lack of subject matter jurisdiction due to the lack of an applicable waiver of sovereign immunity.

2. Whether the District Court properly dismissed Plaintiff's claims for damages arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Federal Defendants for lack of subject matter jurisdiction due to the lack of an applicable waiver of sovereign immunity.

## STATEMENT OF THE CASE

### I. Plaintiff's Complaint

As Federal Defendants could best understand it, Plaintiff's Complaint appeared to relate to one of several business transactions of which Plaintiff alleged he was a part. Plaintiff alleged that an individual named Owen Meddles with unexplained "U.S. government connections," sought financing for various projects and developed a "strong relationship" with Plaintiff regarding their mutual business interests. Compl. (Dkt. No. 1) § 3 ¶¶ 2-3. Plaintiff alleged that Meddles "confided to [him] numerous past and present government projects and the unique

arrangement he (Owen Meddles) had with Willam B. Casey" whereby Casey "directed Internal Government Projects . . . and Owen Meddles directed External Special Projects." Compl. § 3 ¶ 2. Plaintiff asserted that he, in turn, "confided to Owen Meddles of the existence of a Wilcox family account . . . which had extensive funds." Compl. § 3 ¶ 5.

According to Plaintiff, a "Chinese World Trade Agreement Project" was approved at an unclear point in time by former President Ronald Reagan and members of the British monarchy in conjunction with individuals from the People's Republic of China "for the purpose of providing a financial facility . . . to help China create a U.S. Dollar financial platform that was not government financed or controlled." Compl. § 3 ¶ 6. Plaintiff alleged that his family's account was then "to be used as the 'seed money' that would purchase new issue U.S. bonds for the financial platform in a revolving forfaiting process." Compl. § 3 ¶ 6. And Plaintiff alleged that he himself otherwise "was tasked with coordinating the U.S. side of the project" and coordinated the "U.S. Accounting" of this project before it was completed in the late 1980s.

It is not completely clear what Plaintiff alleged occurred next, but a read of his Complaint suggested that Meddles established financial trusts and that the funds that had been obtained from Wilcox's family account ultimately found their way into these trusts. *See* Compl. § 3 ¶¶ 7-11. Plaintiff alleged that he initially

3

suffered from health problems that prevented him from being "active in business activities," but that by "1998, with better health," he looked into the accounts set up by Meddles "only to discover [that] they were in complete disarray and no competent person was in charge of the accounts." Compl. § 3 ¶¶ 12-13. Following this review, Plaintiff claimed that he engaged in a "reconstruction process" to determine the status of these accounts, which he lists in subsequent paragraphs of his Complaint. *See* Compl. § 3 ¶¶ 15-18. Plaintiff then listed a number of letters, emails, and other items regarding these accounts. *See* Compl. § 3 ¶¶ 19-30. As best as Federal Defendants could understand, the crux of Plaintiff's claims—although not quite clearly said—was that Plaintiff's family funds were used as an investment for the "Chinese World Trade Agreement Project" and that Plaintiff was to receive a payout as a result of an investment agreement but that he is not currently able to recover this payout. *See* Compl. § 4.

As relief, Plaintiff's Complaint sought "restitution" of his family funds that he alleged were in various accounts and whose transfer he appeared to allege violated RICO and federal securities regulations. *See* Compl. § 4. In total, Plaintiff sought $853,384,134.80 in damages, and he brought suit as to three officials affiliated with HUD along with three individuals affiliated with the Bank of New York Mellon. *See* Compl. pp. 2-3, § 4.

4

As relevant to HUD, Plaintiff appended to his Complaint a letter that he sent to the Office of Inspector General ("OIG") at HUD on May 12, 2022, appealing for assistance in locating Plaintiff's family funds allegedly located in various accounts and enclosing a variety of letters and items in the letter to the OIG that appear to be related to that claim. *See* (Dkt. No. 1-1 at 7-8.) In that letter, Plaintiff requested that the OIG conduct "an investigation to determine who was paid and where [his] funds are located --- and subsequently returned to [him]." *Id.* at 10. Plaintiff also attached to his Complaint what he stated were screenshots of "Ginnie Mae Data Search Summary" that appeared to show some sort of securities and their stated value in a searchable Ginnie Mae database. *Id.* at 61-67.

Plaintiff's Complaint did not appear to allege what sort of unlawful conduct HUD or any HUD entities or persons engaged in and/or how it related to his alleged investment. However, Federal Defendants understood Plaintiff's Complaint to bring claims under the Securities Act of 1933, the Securities Act of 1934, accompanying securities regulations, and RICO against the Inspector General of HUD, the President of Ginnie Mae, and a HUD employee named Stewart M. Spettel, all in their official capacities. *See* Compl. pp. 2, 4.

## II.   District Court Litigation

Plaintiff filed his complaint in the District Court on November 2, 2022. (Dkt. No. 1.) Federal Defendants then moved for dismissal for lack of subject

5

matter jurisdiction and/or failure to state a claim on January 3, 2023. (Dkt. Nos. 10-11.) Following Federal Defendants' motion, Plaintiff attempted to seek discovery before the District Court had even issued a scheduling order, by bringing a "Motion to Grant Subpoena(s) to Produce Documents in a Civil Action." (Dkt Nos. 22, 23.) Plaintiff's motion was ultimately denied by the Magistrate Judge because Plaintiff sought discovery despite the lack of an order opening discovery. (Dkt No. 25.)

On August 28, 2023, the District Court granted Federal Defendants' motion to dismiss for lack of subject matter jurisdiction as well granting separate motions filed by the BNY Mellon defendants sued by Plaintiff. (Dkt. No. 32.) As to Federal Defendants, the District Court held that without a waiver of the federal government's sovereign immunity, Plaintiff's lawsuit could not proceed. *Id.* at 4. And, in the instant matter, Plaintiff had brought suit against government officials in their official capacity, but "[n]either the statutory text of the federal securities laws nor that of RICO offer[ed] an unambiguous and unequivocal waiver of sovereign immunity to permit Plaintiff to bring this suit against Federal Defendants." *Id.* at 5. In reaching its conclusion, the District Court noted that Plaintiff's claims were only brought under the federal securities laws and RICO, but that neither statute indicated "an intention to waive sovereign immunity of the federal government and its agencies," while also noting caselaw from various jurisdictions remarking the

6

same. *Id.* at 5. Thus, because sovereign immunity had not been waived, the District Court dismissed Plaintiff's claims for lack of subject matter jurisdiction without reaching further arguments by Federal Defendants that Plaintiff could not state a claim against them. *Id.* at 5. In its opinion, the District Court also held that its dismissal was with prejudice finding that Plaintiff could not cure the jurisdictional issue related to his Complaint against Federal Defendants by way of amendment. *Id.* at 6.

On September 21, 2023, Plaintiff noticed an appeal of the District Court's opinion. (Dkt. No. 33.)

## **STANDARD OF REVIEW**

This Court reviews "a dismissal under Rule 12(b)(1) de novo." *See Wu Tien Li-Shou v. United States*, 777 F.3d 175, 179 (4th Cir. 2015). "[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

## **ARGUMENT**

I. **The District Court Properly Dismissed Plaintiff's Securities Claims for Lack of Subject Matter Jurisdiction.**

Plaintiff's securities claims cannot be brought against the federal government, and thus the District Court correctly ruled that it lacked subject matter jurisdiction as Plaintiff could not show that the federal securities laws waive the federal government's sovereign immunity from suit. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). This "[s]overeign immunity is jurisdictional in nature." *Id.* Furthermore, "[i]t is settled law that a waiver of sovereign immunity must be unambiguous and unequivocal." *Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 800 (4th Cir. 2019). At the pleadings stage, the plaintiff bears the burden of showing that the government has waived sovereign immunity. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

As the District Court properly held, the "[f]ederal securities laws do not provide a waiver of sovereign immunity for suit against the federal government." (Dkt. No. 32 at 5.) And as also noted by the District Court, other caselaw supports this point. *See Safeway Portland Emp. Fed. Credit Union v. Fed. Deposit Ins. Corp.*, 506 F.2d 1213, 1216 (9th Cir. 1974) ("The Securities Act makes no reference to a specific waiver of immunity by the sovereign United States and we have been cited to nothing in the legislative history which would indicate such a purpose."); *Kolb v. Naylor*, 658 F. Supp. 520, 525 (N.D. Iowa 1987) ("Nothing in the . . . Securities Act expressly waives sovereign immunity.").

8

Plaintiff has no response to this, and he identifies nothing in the federal securities laws providing the necessary unambiguous and unequivocal waiver of sovereign immunity so as to bring suit under these laws.  At most, Plaintiff asserts that "Judge Giles has declared that the Defendant's [sic] claim of Sovereign Immunity applies to the issuance and sale of GINNIE MAE securities as stated in the Plaintiff's filing" and then discusses Plaintiff's position that these securities are not exempt from federal securities laws.  Pl. Br. at 2.  But the District Court's opinion says no such thing.  Rather, it noted correctly that there is no waiver of sovereign immunity under the federal securities laws, and Plaintiff's citations to supposed requirements regarding reports of securities and his citation to SEC Rule 10b-5, *see* Pl. Br. at 2, do nothing to change that point.  In short, Plaintiff's response is immaterial to the central reason for why the District Court dismissed his federal securities claims for lack of subject matter jurisdiction.  Accordingly, the District Court's opinion should be affirmed.

## II. The District Court Properly Dismissed Plaintiff's RICO Claims for Lack of Subject Matter Jurisdiction.

Plaintiff's RICO claims cannot be brought against the federal government, and thus the District Court correctly ruled that it lacked subject matter jurisdiction as Plaintiff could not show that RICO waives the federal government's sovereign immunity from suit.  As noted in the preceding section, the federal government is

9

shielded by sovereign immunity and cannot be subject to suit absent a waiver of sovereign immunity that must be unambiguous and unequivocal.

As the District Court properly held, "the RICO statute does not explicitly and clearly, or by its statutory history, establish an intention to waive sovereign immunity of the federal government and its agencies." (Dkt. No. 32 at 5.) As with its holding that the federal securities laws do not waive the federal government's sovereign immunity, the District Court cited caselaw concluding the same for RICO. *See Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) ("it is clear that there can be no RICO claims against the federal government"); *Lewis v. United States*, 2021 WL6339604, at *2 (D. Md. Aug. 6, 2021) (similar); *Bloch v. Exec. Off. of the President*, 164 F. Supp. 2d 841, 856 (E.D. Va. 2016) (similar). Indeed, every court of appeals to have considered this question has firmly held that RICO does not waive the federal government's sovereign immunity from suit. *See, e.g.*, *Hamrick v. Bush*, 2006 WL 1524593, at *1 (D.C. Cir. Jan. 26, 2006); *Moore v. United States*, 1998 WL 700551, at *1 (9th Cir. Sept. 23, 1998); *Weaver v. United States*, 98 F.3d 518, 520 & n.2 (10th Cir. 1996).

Plaintiff has no response to this point, has no response to these cases, and identifies nothing in RICO providing the necessary unambiguous and unequivocal waiver of sovereign immunity so as to bring suit under this statute. Instead, Plaintiff points to the definition of money laundering in RICO and two cases that

10

he brought to the attention of the Magistrate Judge purportedly "clarif[ying] that Sovereign Immunity was not appropriate." Pl. Br. at 7. Plaintiff's citation to the definition of money laundering is inapposite and says nothing about the unambiguous and unequivocal waiver of sovereign immunity needed for him to bring suit. Plaintiff's two cited cases—which were presented in a "Motion to Grant Subpoena(s) to Produce Documents in a Civil Action," (Dkt Nos. 22, 23) and which were denied by the Magistrate Judge because Plaintiff sought discovery despite the lack of an order opening discovery (Dkt No. 25)—mention nothing of how RICO waives the federal government's immunity from suit and are inapposite. Furthermore, while at least one order from those cases does not appear to be publicly available, a quick look at the docket for both of Plaintiff's cited actions indicate that they involved instances where the federal government's motion to dismiss was granted, including on jurisdictional grounds. *See Wanta v. Paulson et al.*, 1:07-cv-609-TSE-BRP, Dkt. No. 23 (E.D. Va. Oct. 19, 2007); *Wanta v. United States et al.*, 1:02-cv-01363-GBL, Dkt. No. 17 (E.D. Va. Apr. 25, 2003). And contrary to Plaintiff's argument, neither case appears to have involved the "issuance of subpoenas." Pl. Br. at 7. In short, Plaintiff's response is immaterial to the central reason for why the District Court dismissed his RICO claims for lack of subject matter jurisdiction. Accordingly, the District Court's opinion should be affirmed on this basis as well.

11

## **CONCLUSION**

For the foregoing reasons, Federal Defendants respectfully request that the Court affirm the District Court's order granting Federal Defendants' motion to dismiss and dismissing the claims against them for lack of subject matter jurisdiction. (Dkt. No. 32.)

Dated: October 27, 2023                    Respectfully submitted,

                                                 JESSICA D. ABER
                                                 UNITED STATES ATTORNEY

*By*: _____/s/_____
      YURI S. FUCHS
      Assistant United States Attorney
      Office of the United States Attorney
      2100 Jamieson Avenue
      Alexandria, Virginia 22314
      Tel:   (703) 299-3872
      Fax:   (703) 299-3983
      Email: yuri.fuchs@usdoj.gov

*Counsel for Federal Defendants-Appellees*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

**1.     Type-Volume Limitation**: Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines.   Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines.   Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines.   Counsel may rely on the word or line count of the word processing program used to prepare the document.   The word-processing program must be set to include footnotes in the count.   Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 2,506 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

**2.     Typeface and Type Style Requirements**: A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.   A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10 ½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

_____/s/_____
YURI S. FUCHS
Assistant U.S. Attorney
*Counsel for Federal Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2023, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, and will mail a copy of the foregoing to Plaintiff, a non-filing user, via first class mail to the following address:

> Dana V. Wilcox
> 517 Neely Store Road
> Rockhill, SC 29730

>                    /s/
> Yuri S. Fuchs
> Assistant U.S. Attorney
> U.S. Attorney's Office
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> Tel: (703) 299-3872
> Fax: (703) 299-3983
> Email: yuri.fuchs@usdoj.gov
> *Counsel for Federal Defendants-Appellees*